# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3634-21

JOHN DOE,

     Plaintiff-Appellant,

v.

ARCHDIOCESE OF
PHILADELPHIA,

     Defendant-Respondent.

_____

Argued November 13, 2023 – Decided December 27, 2023

Before Judges Gilson, Berdote Byrne, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2963-19.

M. Stewart Ryan argued the cause for appellant (Laffey Bucci & Kent, LLP, attorneys; Brian Dooley Kent and M. Stewart Ryan, on the briefs).

Nicholas M. Centrella (Clark Hill PLC) argued the cause for respondent.

PER CURIAM

In 2019, plaintiff sued the Archdiocese of Philadelphia (the Archdiocese) in New Jersey.[1] He alleged that in the early 1980s, when he was approximately twelve years old, Father John P. Schmeer, a priest of the Archdiocese, sexually abused him, and that some of the abuse occurred at a personal home co-owned by Schmeer and another priest in Mystic Island, New Jersey.

Plaintiff appeals from an order dismissing his complaint against the Archdiocese for lack of personal jurisdiction. We affirm because jurisdictional discovery established that the Archdiocese did not purposefully avail itself of any benefits in New Jersey related to Schmeer's alleged abuse of plaintiff. Thus, New Jersey does not have personal jurisdiction over the Archdiocese related to this lawsuit.

I.

We discern the facts from the record developed during jurisdictional discovery. The Archdiocese is an unincorporated, religious, non-profit association that operates in Pennsylvania. Its principal place of administration is in Philadelphia, and it oversees Catholic parishes in five Pennsylvania counties. The Archdiocese does not oversee or operate any churches, parishes,

---

[1] Plaintiff identifies himself as "John Doe" in his complaint. We refer to him as plaintiff to protect privacy interests concerning allegations of child sexual abuse. See R. 1:38-3(c)(9); see also N.J.S.A. 2A:61B-1(f).

A-3634-21

or religious facilities in New Jersey. It also does not assign priests to any parishes in New Jersey.

The Archdiocese does not currently own any real property in New Jersey. In the past, the Archdiocese did own several properties in New Jersey that were given to it, but those properties were sold before 2013. The Archdiocese also owned and operated two properties in Ventnor, New Jersey, which it used as vacation homes for priests. The Ventnor properties were acquired in 1963 and sold in 2012 and 2013.

Schmeer was ordained as a Catholic priest in the Archdiocese in 1964. Thereafter, he served as a priest and teacher in the Archdiocese until 2004, when the Archdiocese restricted his activities.

Plaintiff is a resident of Pennsylvania. During his childhood, he attended St. Titus Parish (St. Titus) in East Norriton, Pennsylvania. While attending St. Titus, plaintiff met Father Francis Trauger and Schmeer, both of whom served as priests at St. Titus. Plaintiff alleges that in 1981, he was sexually abused by Trauger at a seminary in Pennsylvania. When plaintiff's father suspected plaintiff was abused by Trauger, he sent him to Schmeer for counseling. Thereafter, Schmeer sexually abused plaintiff on numerous occasions.

A-3634-21

Plaintiff testified that most of the abuse by Schmeer occurred in Pennsylvania in the parish rectory or church. He also alleged that in the early 1980s, Schmeer sexually abused him twice at a home Schmeer co-owned in Mystic Island, New Jersey. Plaintiff explained that he would not have gone to New Jersey alone with Schmeer if his parents had not recommended he seek counseling from Schmeer concerning the alleged sexual abuse by Trauger.

In December 2019, plaintiff sued the Archdiocese in the Law Division in Ocean County. Plaintiff alleged that the Archdiocese was responsible for Schmeer's sexual abuse of him based on theories of vicarious liability, negligence, negligent supervision, and negligent hiring and retention.

The Archdiocese moved to dismiss plaintiff's complaint for lack of personal jurisdiction. Initially, the trial court denied that motion and directed the parties to engage in jurisdictional discovery. Following the completion of that discovery, the Archdiocese again moved to dismiss the complaint.

After hearing argument, on June 20, 2022, the trial court issued a written opinion and order granting the motion and dismissing plaintiff's complaint for lack of personal jurisdiction over the Archdiocese. Plaintiff now appeals.

A-3634-21

II.

On appeal, plaintiff makes two arguments. He contends that the Archdiocese is subject to specific jurisdiction in New Jersey because Schmeer was an agent of the Archdiocese. He also argues that the Archdiocese had sufficient minimum contacts with New Jersey at the time of the alleged sexual abuse of plaintiff and, therefore, New Jersey can exercise jurisdiction consistent with due process.

Personal jurisdiction is a "'mixed question of law and fact' that must be resolved at the outset, 'before the matter may proceed.'" Rippon v. Smigel, 449 N.J. Super. 344, 359 (App. Div. 2017) (quoting Citibank, N.A. v. Est. of Simpson, 290 N.J. Super. 519, 532 (App. Div. 1996)). We review a trial court's findings of fact with respect to jurisdiction "to determine if those findings are supported by substantial, credible evidence in the record," but conclusions of law are reviewed de novo. Id. at 358. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Having considered plaintiff's arguments in light of the record and governing law, we reject them. The facts disclosed during jurisdictional

5

discovery established that the Archdiocese is not subject to jurisdiction in New Jersey because it did not purposefully avail itself of activities in New Jersey sufficient to satisfy the "minimum contacts" required for personal jurisdiction. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1945).

We have recently published two opinions that set forth the law on when a non-resident diocese is subject to personal jurisdiction in New Jersey for the alleged past sexual abuse of a minor by a priest. See D.T. v. Archdiocese of Phila., ___ N.J. Super. ___ (App. Div. 2023); JA/GG Doe 70 v. Diocese of Metuchen, ___ N.J. Super. ___ (App. Div. 2023). Like in those cases, plaintiff concedes that he must show New Jersey has specific personal jurisdiction over the Archdiocese.

To determine whether a non-resident defendant may be subject to specific personal jurisdiction, courts examine the "relationship among the defendant, the forum, and the litigation." Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). "In order for a state court to exercise [specific] jurisdiction over a non[-]resident defendant, the lawsuit 'must aris[e] out of or relat[e] to the defendant's contacts with the forum.'" Jardim v. Overley, 461 N.J. Super. 367, 376 (App. Div. 2019) (third and fourth alterations in original) (quoting Daimler AG v. Bauman, 571 U.S.

6

117, 127 (2014)); accord Waste Mgmt., Inc. v. Admiral Ins. Co., 138 N.J. 106, 119 (1994), cert. denied, 513 U.S. 1183 (1995); see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. ___, 141 S. Ct. 1017, 1025 (2021).

"The 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." Lebel, 115 N.J. at 323 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)); see also Waste Mgmt., 138 N.J. at 126 (explaining that "the existence of minimum contacts turns on the presence or absence of intentional acts of the defendant to avail itself of some benefit of a forum state"). The contacts "must be the defendant's own choice and not 'random, isolated, or fortuitous.'" Ford, 141 S. Ct. at 1025 (quoting Keeton v. Hustler Mag., Inc., 465 U.S. 770, 774 (1984)). Moreover, courts determine, based on the defendant's "'conduct and connection' with the forum state . . . whether the defendant should 'reasonably anticipate being haled into court [in the forum state].'" Bayway Refin. Co. v. State Utils., Inc., 333 N.J. Super. 420, 429 (App. Div. 2000) (alteration in original) (quoting World-Wide Volkswagen, 444 U.S. at 297).

A court "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Asahi Metal Indus.

A-3634-21

Co. v. Superior Ct., 480 U.S. 102, 113 (1987). So, a court weighs "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." Ibid. (quoting World-Wide Volkswagen, 444 U.S. at 292).

Neither the Archdiocese's former ownership of properties in New Jersey nor its supervision over Schmeer as one of its priests established specific jurisdiction over the Archdiocese in New Jersey related to Schmeer's alleged sexual abuse of plaintiff in New Jersey. There is no evidence that the Archdiocese's former ownership of real properties in New Jersey had any relation to plaintiff's allegations of abuse by Schmeer. Plaintiff has testified that he was abused by Schmeer in the early 1980s at a private home Schmeer co-owned in Mystic Island, New Jersey. The Archdiocese's former ownership of other properties in New Jersey was not related to Schmeer's use of the home in Mystic Island. Specific jurisdiction requires "a connection between the forum and the specific claims at issue." Bristol-Myers Squibb Co. v. Superior Ct., 582 U.S. 255, 265 (2017).

Moreover, there was no evidence that the Archdiocese knew of, approved, or sanctioned Schmeer taking plaintiff to a private home in Mystic Island.

Accordingly, there is no evidence demonstrating that the Archdiocese purposefully availed itself of any benefit or activity in New Jersey in connection with plaintiff's allegations of abuse by Schmeer.

For the reasons we detailed in <u>D.T.</u>, we reject plaintiff's argument that Schmeer was acting as an agent of the Archdiocese when Schmeer sexually abused plaintiff. ___ N.J. Super. at ___ (slip op. at 14-19). In short, there is no evidence that Schmeer was acting within the scope of his responsibilities as a priest when he sexually assaulted plaintiff. <u>See</u> <u>Bristol-Myers Squibb Co.</u>, 582 U.S. at 265; <u>Shaffer</u>, 433 U.S. at 204; <u>Lebel</u>, 115 N.J. at 323.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3634-21